

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2020 AUG 20 PM 5: 14

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

**U.S. Department of Justice**

United States Attorney
District of Maryland

| | | |
|---|---|---|
| *Matthew DellaBetta*<br>*Assistant United States Attorney*<br>*Matthew.DellaBetta@usdoj.gov* | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | *DIRECT: 410-209-4857*<br>*MAIN: 410-209-4800* |

July 15, 2020

Richard Bardos, Esq.
Schulman, Hershfield & Gilden, P.A.
One East Pratt Street
Suite 904
Baltimore, Maryland 21201
rbardos@SHG-Legal.com

      Re:    *United States of America v. Lakeya N. Aldridge, a/k/a "Keys," a/k/a "Keya;"* Criminal No. CCB-19-0371

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, **Lakeya N. Aldridge** (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. The terms of the Agreement are as follows:

### Offense of Conviction

      1.    The Defendant agrees to plead guilty to Counts Three of the Superseding Indictment. Count Three charges the Defendant with Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1),(c). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

      2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the dates alleged in the Indictment, in the District of Maryland, the District of Delaware, and elsewhere,

    a. Two or more persons, including the Defendant, entered the unlawful agreement to commit Kidnapping (the elements of which are set forth below);

1

b.  The Defendant knowingly, willfully, and voluntarily became a member of the conspiracy;

*Elements of Kidnapping:*

c.  The Defendant unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted or carried away a person;

d.  The Defendant held the person for ransom or reward or otherwise any reason;

e.  The person was transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the Defendant traveled in interstate or foreign commerce or used the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;

f.  The Defendant acted unlawfully, knowingly, and willfully.

## Penalties

3.  The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MINIMUM SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1201(a) and (c) | None | Life | 5 years | $250,000 | $100 pursuant to 18 U.S.C. § 3013 |

a.  Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c.  Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

2

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense,

however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

  d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

  e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C.§§ 991 through 998. The Defendant further understands that the Court will impose a

4

sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following applicable sentencing guideline factors:

   a. The base offense level is **32** pursuant to United States Sentence Guidelines ("U.S.S.G.") § 2G1.1(a)(l) and § 2X1.1.

   b. Under U.S.S.G. § 2A4.1(b)(5), there is an increase of **6** levels because the victim was sexually exploited, since the offense involved conduct described in 18 U.S.C. § 2421.

   c. The parties disagree as to the applicability of U.S.S.G. §§ 2A4.1(b)(2)(B) (increase of **2** levels if the victim sustained serious bodily injury) and 2A4.1(b)(3) (increase of **2** levels for use of a dangerous instrument). This Office reserves the right to recommend the applicability of one or both of those sections and the Defendant reserves the right to oppose the applicability of either or both of those enhancements.

   d. This Office does not oppose a **2** level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1** level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

   e. **Therefore, the anticipated final offense level is <u>between 35 and 39</u>.**

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the

final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable period of incarceration, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Restitution

10. The Defendant specifically agrees that this agreement and this paragraph covers and applies to all of the victims identified in the Statement of Facts. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. The Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw the Defendant's guilty plea. The Defendant reserves the right to object to this Office's request that the Defendant be ordered to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground

6

that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges can be legally waived.

      b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

          i.      The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

      c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including:

    a. A Black LG Cellphone Model LG-Q710AL, MEID: 089466522502566034;

    b. A Black ZTE cellular telephone *SIN* 325866972810;

    c. A black Samsung Cellular telephone Model SM-S327VL(GP), IMEI: 355744091245112.

14.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

7

15.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

17.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

19.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not

required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____
P. Michael Cunningham
Matthew Dellabetta
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8/20/20                                   _____
Date                                      Lakeya N. Aldridge

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/20/20                                   _____
Date                                      Richard Bardos, Esq

9

## ATTACHMENT A
## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Lakeya N. Aldridge (the "Defendant"), a/k/a "Keys," a/k/a "Keya," age 39, is a Federalsburg, Maryland resident. From on or about October 25, 2018 through October 30, 2018, the Defendant conspired with Joshua Lankford, Kevonne Murphy, and David Goodwin to commit sex trafficking and to commit kidnapping as described herein.

In October 2018, Victim 1, age 22, was living in Federalsburg, Maryland, and suffering from a severe drug addiction. She had been engaging in commercial sex acts on her own before being approached by an individual by the name of Joshua Lankford ("Lankford"). Lankford, knowing of Victim 1's drug addiction, lured Victim 1 into performing commercial sex acts under his direction with the promise to Victim 1 that he would help Victim 1 make more money in order to buy a house and attain custody of her son. Lankford told Victim 1 that she would have to give all of the money she made from the commercial sex acts to him directly.

After Victim 1 had worked for Lankford for a couple days, Lankford recruited Kevonne Murphy ("Murphy"), the Defendant, and David Goodwin ("Goodwin") to join the conspiracy to engage in sex trafficking of Victim 1. When Lankford recruited the Defendant, he instructed her to continue requiring Victim 1 to engage in commercial sex acts, and he offered the Defendant money in exchange for helping to maintain Victim 1.

On or about October 25, 2018, the Defendant drove Victim 1, Murphy, and Lankford to Laurel, Delaware, and checked into a hotel room at the Relax Inn. On October 27, 2018, Victim 1 was then driven to the Sunrise Motel Room in Seaford, Delaware, where she stayed for one day before being driven back to the Relax Inn on or about Sunday, October 28, 2018. Victim 1 engaged in commercial sexual acts for money at both of these hotel rooms. Victim 1 was required to give the money she made from the commercial sexual acts to either the Defendant, Lankford, or Murphy. Victim 1 used Murphy's cellular telephone so she could contact the Defendant on the Defendant's cellular phone, after she was finished engaging in the commercial sex act with a client and when she was ready to be picked up from the hotel.

On or about October 29, 2018, Victim 1 was driven back to Maryland where she performed commercial sex acts and was required to give all of the money to the Defendant, Lankford, Murphy, and/or Goodwin. After one commercial sex act, Victim 1 unsuccessfully tried to escape the Defendant, Murphy, and Goodwin by jumping out of the Defendant's moving car. The defendants stopped Victim 1 and called Lankford to tell him about Victim 1's attempted escape. The Defendant then picked up Lankford with Goodwin, Murphy, and Victim 1 still in her car.

Lankford told the Defendant, Goodwin and Murphy, "I know where to go," and directed the Defendant to drive to railroad tracks, a remote location in Federalsburg, Maryland, for the purpose of physically assaulting Victim 1 as punishment and to maintain her compliance. While parked at the railroad tracks, Victim 1 was ordered out of the vehicle. Victim 1 was then beaten with closed fists about her face, torso, and neck. Victim 1 was also repeatedly struck about her unclothed buttocks with the Defendant's belt. The Defendant and her co-conspirators then immediately transported Victim 1 to the Relax Inn in Laurel, Delaware, with Lankford and Goodwin gripping the Defendant's belt around Victim 1's neck throughout the car ride back to Delaware.

Once inside the hotel room, Victim 1 was not permitted to put on any clothes for the remainder of the evening and was forced to take a cold shower. At one point, at least one other patron of the hotel came into the room, and Lankford forced Victim 1, still unclothed, to stand up and spin around so that the gentleman could see her and determine if he wanted to pay the Defendant, Lankford, Murphy, and Goodwin to engage in commercial sex with Victim 1.

During the evening of October 29, 2019, Lankford initiated the drafting of a list of sex acts that Victim 1 would be required to perform as things moved forward, and attempted to set prices in order to lend more structure to the enterprise. The Defendant and her co-conspirators were all present for this conversation. Additionally, during this conversation Lankford made reference to the Defendant, Murphy, and Goodwin being his "foot soldiers" who were on the front lines maintaining Victim 1. This sex act list was later recovered pursuant to a search warrant of the motel room at the Relax Inn. The list was drafted on Lankford's notepad, which had been in a book bag he carried with him.

On one occasion, when the Defendant, Lankford, and Murphy had left the motel room during the evening hours of October 29, 2018 and/or into the early morning of October 30, 2018, Victim 1 was left in the room with Goodwin. Murphy and the Defendant left Murphy's cellular phone in the room with Goodwin and Victim 1 so that they could check in via text message.

In the early morning hours of October 30, 2018, the Defendant's cellular phone, call number (302)-362-2143, transmitted text messages to Murphy's cellular phone, call number (443)-258-3294, which was in the possession of Goodwin, to check in on Victim 1. The Defendant's phone sent the following text message at 3:28 a.m.: "You good bruh." At 3:28 a.m., the following reply was sent from Murphy's phone, "yea im good og I got her locked down," and at 3:29 a.m., the Defendant's phone sent the following text message: "Ite just checking." In the early morning hours on that same day, the Defendant and Murphy returned to the room where Goodwin was with Victim 1.

On October 30, 2018 at approximately 8:30 a.m., Victim 1 was able to call 911 by accessing the Defendant's cell phone without her knowledge. Upon arrival at the hotel room, Delaware State Police troopers knocked on the door and Murphy opened the door. Troopers were able to see Victim 1 standing behind Murphy where she was indicating that she was in distress. Victim 1 was wearing only a bed sheet and had visible injuries to her forehead, neck,

and jaw. Victim 1, Murphy, Goodwin, and the Defendant, were escorted from the hotel room. After further investigation, Murphy, Goodwin, Lankford, and the Defendant were arrested.

All or substantially all of the commercial sex acts that Victim 1 performed during this time frame were set up using Facebook messenger, a social networking application which utilizes the internet to allow a user to exchange private messages with others. Victim 1 used the Defendant's phone and her co-conspirators' phones in order to coordinate commercial sex acts, and Lankford, Murphy, and Goodwin dictated prices and how much money Victim 1 was required to make.

SO STIPULATED:

P. Michael Cunningham
Matthew Dellabetta
Assistant United States Attorneys

DATE: 20 August 2020

Lakeya N. Aldridge
Defendant

Richard Bardos, Esq.
Counsel for Defend

12